I respectfully dissent. The majority opinion is premised upon its conclusion that the September 16, 1997 letter was merely a refusal to pre-authorize a procedure and was not tantamount to a denial. I cannot agree with that conclusion. The letter clearly denied coverage for "health insurance benefits on Megan for the jaw, teeth and gums." The letter went on to give Barstow the choice of agreeing with that denial or losing health insurance coverage for herself and her children. Barstow was entitled to have the jury determine whether Congress Life breached the contract of insurance when it sent that letter and, if so, whether Congress Life had properly investigated the claim, subjecting the results of its investigation to a cognitive evaluation and review.
The majority concludes that the September 16 letter might have been an anticipatory repudiation of the contract of insurance by Congress Life, a theory of recovery which Barstow did not assert in the trial court. The majority states:
 "While the September 16, 1997, letter was not tantamount to a breach on the part of Congress Life, as Barstow contends, it might have been more properly *Page 944 
described as an anticipatory repudiation. The letter itself is phrased in terms of future performance and indicates Congress Life was unwilling to perform under the terms of the policy unless Barstow executed the waiver-of-benefits endorsement. This, in itself, could have given Barstow an immediate claim for damages for breach; however, Barstow did not assert such a theory of recovery in her complaint, and that theory was not tried below or submitted to the jury. See Kmart Corp. v. Bassett, 769 So.2d 282, 284 n. 1 (Ala. 2000)."
790 So.2d at 938-39.
There are two basic flaws in that conclusion. First, regardless of whether Barstow were to execute the Waiver of Benefits Endorsement, Congress Life had no intention of performing under the policy insofar as any claim "on Megan for the jaw, teeth and gums" was concerned. Second, when Congress Life did not receive the demanded waiver by September 30, 1997, there was absolutely nothing anticipatory about its repudiation of the contract. In fact, an internal memorandum of Congress Life stated clearly that the policy had been rescinded.
The majority indicates that pre-authorization was "at most . . . delayed for six weeks." 799 So.2d at 938. Actually, Congress Life reversed its earlier repudiation of coverage in a November 3, 1997 letter to Barstow's attorney, apparently acknowledging the wrongfulness of its prior claim denial and rescission, i.e., its breach of contract. The letter was written after the deadline for rescission had passed, after Congress Life had received a letter from Barstow's counsel, after Congress Life had decided to have a qualified person review the relevant medical records, after Congress Life failed to advise the insured or her counsel of its alleged reconsideration, after Congress Life had been sued, and twelve days after Congress Life had been served with Barstow's complaint.
The "reconsideration" and resulting affirmation of coverage no doubt served to reassure Barstow and to reduce her potential damages. The jury's awards of both compensatory and punitive damages are obviously excessive. This Court should have dealt with those issues, not with the factual issues regarding breach of contract and bad faith.